**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**NEW YORK CENTRAL MUTUAL**          :
**INSURANCE COMPANY, <u>et al.</u>,**
                                     :   **CIVIL ACTION NO. 3:14-0829**

      **Plaintiffs**                :          **(JUDGE MANNION)**

      **v.**                       :

**MARGOLIS EDELSTEIN, <u>et</u> <u>al.</u>,**   :

      **Defendants**                :


## <u>MEMORANDUM</u>

Pending before the court is the defendants' motion to dismiss the plaintiffs' second amended complaint, (Doc. <u>14</u>), and to strike the attorneys' fees demand. Based upon the court's review of the relevant documents, the court will **GRANT** the defendants' motion since it finds plaintiffs' claims to be time-barred.


## I.    BACKGROUND

By way of relevant background, the plaintiffs, New York Mutual Insurance Company ("NYCM") and St. Paul Mercury Insurance Company ("St. Paul"), filed the instant action alleging one count of legal malpractice on April 29, 2014. (Doc. <u>1</u>). The defendants were the law firm of Margolis Edelstein and Michael T. Savitsky, Esq. It was alleged that this federal court had subject matter jurisdiction based on diversity of citizenship pursuant to <u>28 U.S.C. §1332</u>. On April 30, 2014, the court issued an order and dismissed the complaint without prejudice  pursuant to <u>Fed.R.Civ.P. 12(h)(3)</u> since plaintiffs failed to show that there was complete diversity. (Doc. <u>3</u>). An amended complaint was filed by the plaintiffs on April 30, 2014. (Doc. <u>4</u>). On May 1,

2014, the court issued an order and found that plaintiffs' amended complaint still failed to properly establish diversity since it did not properly allege that each of the partners of Margolis Edlestein have diverse citizenship from each of the plaintiffs. Thus, the court again dismissed plaintiffs' pleading and directed plaintiffs to file a second amended complaint within 30 days. (Doc. 5). On May 2, 2014, plaintiffs filed a second amended complaint and alleged that each of the partners of Margolis Edlestein had diverse citizenship from each of the plaintiffs. (Doc. 6). The defendants were then served. (Doc. 8).

On June 30, 2014, plaintiffs filed a Certificate of Merit under Pa.R.Civ.P. 1042.3.[1] (Doc. 9). One of the counsel for plaintiffs certified that a licensed professional has supplied a written statement that there is a reasonable basis to conclude that the care, skill or knowledge exercised or exhibited by the defendants in the work alleged in the complaint fell outside of the acceptable professional standards and that this conduct caused the plaintiffs' alleged harm. (Doc. 9).

On August 4, 2014, defendants filed a motion to dismiss the plaintiffs'

---

[1]Since plaintiffs are raising a professional malpractice claim under Pennsylvania law against defendants, they were required to file a Certificate of Merit ("COM") pursuant to Pa.R.C.P. 1042.3(a)(1). A COM is required for a Pennsylvania professional negligence claim raised in a malpractice action. *See Santee v. U.S.*, Civil Action No. 3:CV-07-2207, September 30, 2008 Memorandum and Order (M.D. Pa.), 2008 WL 4426060 (M.D. Pa.); Frantz v. Fasullo, 2014 WL 6066020("Pennsylvania law requires a plaintiff alleging legal malpractice to file a certificate of merit."). "The COM requirement is set forth in a procedural rule, but federal courts exercising diversity and supplemental jurisdiction have considered it substantive law that must be applied to claims under Pennsylvania law presented in federal court." *Booker v. U.S.*, 2009 WL 90129, *3 (citations omitted).The Third Circuit has held that a COM is a substantive rule and applies when a case is filed in federal court. *See* Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 264-65 (3d Cir. 2011).

second amended complaint with prejudice  pursuant to Fed.R.Civ.P. 12(b)(6) as time barred. (Doc. 14). In the alternative, defendants moved to dismiss the plaintiffs' pleading for failure to state a claim for relief with the required specificity pursuant to Fed.R.Civ.P. 8(a), 12(b)(6), and 12(e). Further, defendants moved to strike the attorneys' fees demand from the pleading pursuant to Fed.R.Civ.P. 12(f).

The defendants maintain that "[t]his action alleges a single count of legal malpractice, the gravamen of which is an alleged failure to adhere to professional standards of due care, filed more than two years after the claim arose, and so barred by Pennsylvania's two-year statute of limitations applicable to negligence claims (42 Pa.C.S. §5524(7))." (Doc. 14, at 2). The defendants also state that the second amended complaint is vague and conclusory and fails to sufficiently allege facts to support the conclusion that they were negligent. Further, the defendants argue that plaintiffs' pleading contains an improper demand for attorneys' fees contrary to the "American Rule" and, since it is not authorized by any statute or contract, it should be stricken.

Also, on August 4, 2014, defendants filed their brief in support to their motion to dismiss with attached exhibits, including a copy of plaintiffs' second amended complaint and copies of unpublished decisions as well as relevant correspondence between the parties. (Doc. 15. Docs. 15-1 to 15-3). After being granted an extension of time, plaintiffs filed their opposition brief on September 2, 2014, with attached exhibits, including the Declaration of attorney Richard S. Mills regarding the unpublished decisions cited in plaintiffs' brief as well as copies of the unpublished decisions. (Doc. 24. Docs. 24-1 to 15-3). The defendants filed their reply brief on September 16, 2014. (Doc. 26). As such, defendants' motion to dismiss is ripe for disposition. The court notes that the parties are currently conducting discovery.

## II.    STANDARD OF REVIEW

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged

4

in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   SECOND AMENDED COMPLAINT

Accepted as true, the allegations of the plaintiffs' second amended complaint, as correctly stated by plaintiffs, (Doc. 24, at 5-7), provide:

> On March 6, 2003, Marcial Gonzalez, a permissive user of an automobile owned by NYCM's insured, Hildegarber Lopez, was involved in a collision with another vehicle in which Cheryl Shannon sustained physical injuries. Shannon retained counsel, who, on September 6, 2003, made a pre-suit demand to NYCM for the full limits ($25,000) of the policy issued to Lopez. NYCM declined the demand, and later made a final offer of $12,500. When Shannon filed suit against Gonzalez (the underlying "Shannon Litigation"), her demand rose to $200,000, predicated, in part, on NYCM's prior failure to tender the full policy limits. NYCM sought and obtained the advice of Michael T. Savitsky, Esq., a partner at Margolis

Edelstein in Scranton, Pennsylvania. In correspondence dated November 19, 2009, Mr. Savitsky agreed to perform legal services for NYCM, which included agreeing to "provide [NYCM] with a Legal Opinion on the validity of any Bad Faith Claim under the confines of Pennsylvania law." See Dckt. Rpt. #6, ¶¶ 101, 128; Dckt. Rpt. #15-1, pp. 23 of 28. Mr. Savitsky outlined the initial steps to be taken "prior to providing our legal opinion to you," which included reviewing documentation and "perform[ing] legal research applicable to the facts of this case," and "prepar[ing] and "circulat[ing]" a thorough outline "to all Counsel in the Scranton office, with an eye toward scheduling a meeting of those Counsel in order to conference this matter." See Dckt. Rpt. #15-1, pp. 23 of 28.

In a letter dated January 29, 2010, Mr. Savitsky advised NYCM that he did not believe that a potential bad faith claim against NYCM resulting from its handling of settlement in the underlying Shannon Litigation would be successful. See Dckt. Rpt. #6, ¶ 102. On April 30, 2010, Mr. Savitsky further advised that "[o]ur prior opinion has not changed," and recommended "that New York Central Mutual and its Counsel should not make any Offer beyond the $25,000, and should not make inquiry as to whether a sum of money above the policy limit of $25,000 would successfully resolve the third party action and also Release any bad faith claim." See Dckt. Rpt. #6, ¶ 105; see also Dckt. Rpt. #15-1, pp. 26 of 28.

Ultimately, Gonzalez stipulated to his sole liability in the Shannon Litigation and the jury returned a verdict on damages that was later remitted to $960,000. Gonzalez then assigned his rights against NYCM to Shannon, who agreed not to execute the judgment against Gonzalez and instead prosecuted his claims against NYCM for bad faith. Shannon filed suit against NYCM on May 3, 2013 in the state court in Lackawanna County, from which the suit was removed to this court [Civil No. 13-1432, M.D.Pa.]. Following settlement negotiations, the matter was ultimately

settled for $2 million. On April 29, 2014, Plaintiffs commenced the instant action, seeking to recover against Defendants, Margolis Edelstein and Michael T. Savitsky, Esq., for breach of their agreement to provide legal advice to NYCM in connection with NYCM's potential bad faith exposure predicated on its claims handling and settlement position in the Shannon Litigation. See Dckt. Rpt. #1, Dckt. Rpt. #6.

(Footnotes omitted). (*See also* Doc. 6, at 9-15).

Plaintiffs raise one cause of action against defendants for breach of contract basically alleging that defendants "breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney by providing NYCM with legal advice that was so misleading that it precluded NYCM from making an informed judgment about whether to offer a sum in excess of its policy limits, or, to accept the opportunity to settle the Shannon claim for $200,000" and "by failing to provide NYCM with a complete and correct analysis of the law governing insurance bad faith claims in the Commonwealth of Pennsylvania." (Doc. 6, at 18). Due to the alleged deviations from the standard of care of a reasonable attorney by defendants, plaintiffs allege that they were caused substantial harm in the form of an unfavorable settlement with Shannon." (Id., at 19). As relief, plaintiffs seek compensatory damages of at least $2,000,000, as well as attorneys' fees and costs. (Id., at 20).

## IV.   DISCUSSION

The parties initially dispute whether plaintiffs' legal malpractice claim against defendants sounds in contract or tort and, whether it is subject to a 4-year or 2-year statute of limitations. Plaintiffs note that "[d]efendants concede that Mr. Savitsky's alleged breach occurred [at the latest] when he

sent his April 30, 2010 letter to NYCM." (Doc. 24, at 7 n. 2. Citing Doc. 15, at 16). The parties agree that under the occurrence rule, the statute of limitations begins to run when the alleged breach of duty occurred. As such, defendants argue that since the alleged breach of duty occurred when defendant Savitsky sent his April 30, 2010 letter, plaintiffs commenced the instant action on April 29, 2014, "well beyond the two-year statue of limitations for legal malpractice claims based on professional negligence, contained in 42 Pa.C.S. §5524(7)." Doc. 15, at 16-17). Plaintiffs state that they timely filed this action within one day before the expiration of the statute since their sole claim against defendants is legal malpractice based on a breach of contract governed by Pennsylvania's 4-year statute of limitations contained in 42 Pa.C.S. §5525(a)(8). Defendants assert that "the weight of authority in the Third Circuit, ... , is that a claim for legal malpractice that is not based on breach of a specific instruction or provision of the parties' agreement, but is based instead on the alleged failure to abide by a professional standard of care, sounds in negligence for purposes of the statute of limitations." (Id., at 17). Defendants then state that since plaintiffs do not allege they breached a specific instruction or agreement, and since plaintiffs allege they "deviated from the standard of care of a reasonable attorney", plaintiffs' claims sound in tort and are time barred. (Id.).

In Knopick v. Connelly, 2009 WL 5214975 (M.D.Pa. Dec. 29, 2009), the district court granted the Connelly defendants' motion to dismiss in a legal malpractice case since it found the 2-year statue of limitations expired. The district court acknowledged that a plaintiff can assert a malpractice claim under both contract and tort theories of liability. The court found that even though plaintiff styled his claim against the Connelly defendants as a beach of contract, the allegations in plaintiff's complaint asserted an action sounding in tort and not contract. Thus, the court found that the gist of the action

8

against the Connelly defendants based on the allegations in plaintiff's complaint was a claim arising in professional negligence. Subsequently, the district court granted remaining defendant attorney Downey's summary judgment motion since it found the 2-year statue of limitations applicable to a legal malpractice claim sounding in negligence had expired. Knopick v. Connelly, 2010 WL 411701 (M.D.Pa. Jan. 25, 2010). The plaintiff appealed only the district court's decision granting defendant Downey's summary judgment motion.

In Knopick v. Connelly, 639 F.3d 600 (3d Cir. 2011), the Third Circuit reversed the granting of summary judgment by the district court in favor of defendant attorney Downey. As indicated, the decision of the district court granting the Connelly defendants' motion to dismiss was not appealed. Nor did the Third Circuit address whether plaintiff properly asserted a breach of contract claim against the Connelly defendants since plaintiff abandoned his contract claim during oral argument on appeal.

The Third Circuit noted that a legal malpractice tort claim in Pennsylvania requires: (1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff." Id. at 606 n. 7. (Citation omitted). The Third Circuit Court in *Knopick*, 639 F.3d at 606-07, then stated:

> Pennsylvania imposes a two-year statute of limitations on tortious conduct, including legal malpractice actions. 42 Pa.C.S.A. § 5524. **Pennsylvania favors strict application of statutes of limitations**. Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 441 (Pa.Super.Ct.2003), appeal granted in part, 582 Pa. 101, 870 A.2d 318 (2005) and order aff'd without opinion, 584 Pa. 129, 881 A.2d 1266 (2005). "Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue

9

involves a factual determination, the determination is for the jury." Foulke v. Dugan, 187 F.Supp.2d 253, 258–59 (E.D.Pa.2002) (quoting Hayward v. Med. Ctr. of Beaver Cnty., 530 Pa. 320, 608 A.2d 1040 (1992)).

The trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty. Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 572 (Pa.Super.Ct.2007). Under the occurrence rule, "the statutory period commences upon the happening of the alleged breach of duty." Id. at 572 (quoting Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 449 Pa.Super. 367, 674 A.2d 244, 246–47 (1996)). Where a plaintiff could not reasonably have discovered his injury or its cause, however, Pennsylvania courts have applied the discovery rule to toll the statute of limitations. Wachovia, 935 A.2d at 572–74 (citing Pocono Int'l Raceway v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468, 471 (1983)). Where the discovery rule does apply, the two-year period on legal malpractice actions begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause. Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 611 (2000).

(Emphasis added).

As mentioned, in December of 2009, the district court in *Knopick* first considered a motion to dismiss filed by the Connelly defendants. Plaintiff alleged in his complaint that the Connelly defendants "acted in deviation from the standard of care of a reasonable attorney and breached their duties they owed to [plaintiff]" and, that the Connelly defendants' "actions were the proximate cause of [plaintiff's] harms, were a substantial factor in bringing about his harms, and significantly increased the risk of his harms would occur." Knopick v. Downey, 963 F.Supp.2d 378, 383 (M.D.Pa. 2013). The district court granted the motion to dismiss of the Connelly defendants based

10

on the Pennsylvania 2-year statute of limitations for legal malpractice claims. The district court found that "despite plaintiff labeling Count I as breach of contract against the Connelly defendants, the allegations contained therein were more properly asserted as an action sounding in tort rather than contract." Id. at 384.

Subsequently, the district court in *Knopick* applied the occurrence rule and found that the statute of limitations on plaintiff's legal malpractice claim expired and granted summary judgment for the remaining defendant attorney Downey. On appeal, the Third Circuit held that the discovery rule should have been used and that as a matter of law, plaintiff's injury was not readily ascertainable when the alleged breach of duty occurred. Thus, as stated, the Third Circuit reversed the district court's grant of summary judgment for defendant Downey.

After the *Knopick* case was remanded to the district court, plaintiff filed a motion for reconsideration of the court's dismissal of his claim against the Connelly defendants which was based on the expiration of the statute of limitations applicable to a legal malpractice claim sounding in negligence. Plaintiff, based in part, his motion on a December 20, 2012, Pennsylvania Superior Court case, Coleman v. Duane Morris, LLP, 58 A.3d 833 (Pa.Super. 2012). The district court denied plaintiff's motion and again found that "plaintiff failed to plead a professional malpractice breach of contract action" and that "[his] claim was not subject to the four-year statue of limitations applicable to breach of contract actions." Knopick v. Downey, 963 F.Supp.2d at 389. The district court did not base its decision in denying plaintiff's motion for reconsideration on the Superior Court case of Coleman v. Duane Morris, LLP.

In the present case, there is no dispute that Mr. Savitsky's alleged breach occurred when he sent his April 30, 2010 letter to NYCM. Nor is there any dispute that a legal malpractice breach of contract claim is subject to

Pennsylvania's 4-year statue of limitations and that a legal malpractice claim could be brought under a contract theory. See Frantz v. Fasullo, 2014 WL 6066020, *3 (M.D.Pa. Nov. 13, 2014) ("Under Pennsylvania law, a client may bring both a contract action and a tort action against a professional.") (citations omitted). What is disputed is whether plaintiffs' claims as alleged in their second amended complaint sound in negligence or contract. The court agrees with defendants that the allegations in plaintiffs' second amended complaint do not establish a legal malpractice breach of contract claim since plaintiffs fail to adequately allege a breach of a specific instruction or provision of the agreement of the parties. Rather, as defendants maintain, plaintiffs' legal malpractice claims are based on failure of defendants to abide by the relevant professional standard of care. In Javaid v. Weiss, 2011 WL 6339838, *6 (M.D.Pa. Dec. 19, 2011), (quoting Sherman Indus., Inc. v. Goldhammer, 683 F.Supp. 502, 506 (E.D.Pa.1988)), this court stated, "if allegations of a contractual relationship between plaintiff and defendants, and of an express or implied term of the contract establishing an obligation to exercise reasonable care, were to suffice to state a breach-of-contract malpractice case, the two year limitations statute for tort actions would be a dead letter in ... malpractice cases."

Recently, this court in Frantz v. Fasullo, 2014 WL 6066020, *4, addressed the issue presented in the instant case and stated:

> In addition to the express provisions of an attorney-client agreement, "[a]n attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." Bailey [v. Tucker], 621 A.2d [108] at 115 [Pa. 1993]. **Thus, absent allegations that the attorney failed to follow specific client instructions or**

**breached a specific provision of their contract, a client's breach of contract claim against a lawyer "is not a true contract cause of action but sounds in negligence by alleging [that the attorney] failed to exercise the appropriate standard of care**." Storm [v. Golden], 538 A.2d [61] at 65 [Pa.Super. 1988]; see also Edwards v. Thorpe, 876 F.Supp. 693, 694 (E.D.Pa.1995) ("**[W]hen a plaintiff's cause of action is based on the attorney's failure to exercise due care, it will sound in contract only if the attorney fails to follow the client's specific instructions or, by her negligence, breaches a specific provision of the contract**.").

(Emphasis added).

On December 15, 2014, the Pennsylvania Supreme Court in Bruno v. Erie Ins. Co., —A.3d—, 2014 WL 7089987 (Pa. Dec. 15, 2014), addressed the gist of the action doctrine to determine whether a claim was properly a tort claim or whether the true gist or gravamen of the claim was for breach of a contract which existed between the parties. In *Bruno*, 2014 WL 7089987, *18-*19 (footnotes omitted), the court stated:

The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, FN15 to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of

the contract—then the claim is to be viewed as one for breach of contract. See McCahan; Cook; Horney. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. See Zell; Krum; Reitmeyer; Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 885 (2007) (holding that action against insurer for bad faith conduct pursuant to 42 Pa.C.S.A. § 8371 is for breach of a duty "imposed by law as a matter of social policy, rather than one imposed by mutual consensus"; thus, action is in tort); see also Prosser and Keeton at 656 (reviewing extant case law, and noting the division therein between actions in tort and contract based on the nature of the obligation involved, observing that "[t]ort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others ... [which are] independent of promises made and therefore apart from any manifested intention of parties to a contract, or other bargaining transaction."); Tameny v. Atl. Richfield, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330, 1335 (1980) ("Whereas contract actions are created to protect the interest in having promises performed, tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy." (quoting Prosser, Law of Torts 613 (4th ed.1971))). Although this duty-based demarcation was first recognized by our Court over a century and a half ago, it remains sound, as evidenced by the fact that it is currently employed by the high Courts of the majority of our sister jurisdictions to differentiate between tort and contract actions. FN16 We, therefore, reaffirm its applicability as the touchstone standard for ascertaining the true gist or gravamen of a claim pled by a plaintiff in a civil complaint. FN17

Notably, and of relevance to the case at bar, our prior decisions in Zell and Krum underscore that the mere existence of a contract between two parties does not, ipso facto, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract. Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party, see, e.g., Bloomsburg Mills v. Sordoni, 401 Pa. 358, 164 A.2d 201 (1960) (finding evidence sufficient for jury to have concluded architect was negligent in failing to exercise reasonable care in performance of duties imposed by design contract), or to a third person, see, e.g., Evans, supra (elevator repair company liable for injuries to user of the elevator caused by its negligent performance of service contract with building owner); Farabaugh v. Pa. Turnpike Comm'n, 590 Pa. 46, 911 A.2d 1264 (2006) (recognizing claim for negligence against construction company for injuries to a third person caused by company's allegedly deficient performance of its contractual duty of inspection).

**Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.** See Zell, 1830 WL 3261, at \*3 (considering action to be in tort since it was for breach of the defendant's duty to perform, in a "workmanly manner," construction activities specified by the construction contract); Evans, 168 A.2d at 575 ("It is not the contract per se which creates the duty [to avoid causing

injury to third parties]; it is the law which imposes the duty because of the nature of the undertaking in the contract."); Reitmeyer (negligence action was based on landlord's alleged breach of his independent duty of care imposed by law, which arose because of the parties' establishment of a contractual relationship through the formation of the lease agreement, not for a breach of a duty created by the agreement itself).

The *Bruno* Court then examined the allegations in plaintiffs' complaint to determine whether plaintiffs' claim was a tort claim or a breach of contract claim. The court found that even though defendant Erie had contractual obligations under the insurance policy to investigate whether mold was in plaintiffs' house and to pay for any damage cause by mold, "the substance of the [plaintiffs'] allegations is not that [Erie] failed to meet these obligations; rather it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the [plaintiffs] that they continue their renovation efforts, which caused them to suffer physical harm because of their reasonable reliance on those assurances." Id. at *20. The court in *Bruno* found that plaintiffs' claim was a tort claim under the gist of the action doctrine since plaintiffs' "allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself." Id.

The court finds based on the recent decision of the Pennsylvania Supreme Court in the *Bruno* case, the November 16, 2009 letter from Savitsky to NYCM "merely served as the vehicle which established the relationship between the [plaintiff and defendants], during the existence of which [defendants] allegedly committed a tort." Id. As the Bruno Court stated,

"our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party." Id. at *18. In the present case, there is no doubt that defendant Savitsky had contractual obligations under the letter to perform legal research applicable to the facts of the underlying insurance claim, such as being "completely thorough" and conferring with all counsel in Margolis Edelstein's Scranton office prior to providing his legal opinion to NYCM regarding its potential exposure to the bad faith claim. However, the gist of plaintiffs' complaint is that Savitsky, during the course of fulfilling his obligations under his letter, allegedly acted in a negligent manner by not conducting thorough research on Pennsylvania law regarding bad faith claims, by giving NYCM incorrect and erroneous legal advice as to the merits of the bad faith claim and, by providing NYCM with legal advice that was so misleading that it precluded NYCM from making an informed judgment about whether to offer a sum in excess of its policy limits, or, to accept the opportunity to settle the Shannon claim for $200,000, which caused plaintiffs to suffer damages due to their reasonable reliance on Savitsky's assurances. Thus, the court finds that plaintiffs' claim is a tort claim under the gist of the action doctrine.

The court finds that similar to the *Knopick* case and the allegations against the Connelly defendants, that instant plaintiffs' allegations in their second amended complaint "clearly used tort-like language establishing a duty of care, breach of that duty, direct and proximate causation, and damages, and adequately plead a professional negligence action, that is, a tort." Knopick v. Downey, 963 F.Supp.2d at 389. The court agrees with the *Frantz* Court and finds that "absent allegations that the attorney failed to follow specific client instructions or breached a specific provision of their contract, a client's breach of contract claim against a lawyer 'is not a true

contract cause of action but sounds in negligence by alleging [that the attorney] failed to exercise the appropriate standard of care.'" Frantz v. Fasullo, 2014 WL 6066020, *4 (quoting Storm v. Golden, 538 A.2d at 65). Since plaintiffs in the present case failed to plead a professional malpractice breach of contract claim against defendants, the court finds that plaintiffs' claim is subject to the 2-year statue of limitations applicable to tort actions in Pennsylvania.

As defendants point out, (Doc. 15, at 25), the district court in Knopick v. Downey, 963 F.Supp.2d at 390, recognized there is support in Pennsylvania courts that "a plaintiff need not plead a breach of a specific instruction to properly plead a professional malpractice action in assumpsit", namely, Gorski v. Smith, 812 A.2d 683 (Pa.Super.Ct. 2002). In fact, plaintiffs in the present matter rely on the *Gorski* case. The court in *Knopick*, 963 F.Supp.2d at 390-91, then held as follows:

> In Gorski, the Pennsylvania Superior Court stated:
>
>> [A] plaintiff's successful establishment of a breach of contract claim against an attorney ... does not require proof by a preponderance of the evidence that an attorney failed to follow a specific instruction of the client.... [I]f a plaintiff demonstrates by a preponderance of the evidence that an attorney has breached his or her contractual duty to provide legal service in a manner consistent with the profession at large, then the plaintiff has successfully established a breach of contract claim against the attorney.
>
> 812 A.2d at 697. Gorski was decided by the Superior Court several years prior to this court's December 29, 2009 order, thus, it cannot be considered a change in controlling law. Although Plaintiff now asserts the court should have

followed Gorski's requirements rather than those set forth in *Saferstein*, Plaintiff chose not to appeal the court's December 29, 2009 decision. Of course, even assuming the court made an error of law, it is well-settled that a Rule 60(b)(6) motion is an inappropriate substitute for an appeal, and that a legal error, without more, does not warrant the granting of such a motion. See Selkridge, 360 F.3d at 173. Moreover, Gorski is a Pennsylvania Superior Court decision, and not a Supreme Court decision, and although the decisions of intermediate appellate courts are afforded due weight, it is less than clear that Gorski was controlling. Indeed, **even following this court's December 29, 2009 decision, federal courts applying Pennsylvania substantive law to professional malpractice breach of contract actions continued to hold that plaintiffs "may not repackage a negligence-based malpractice claim under an assumpsit theory to avoid the statute of limitations**." See, e.g., Javaid v. Weiss, Civ. No. 4:11–cv–1084, 2011 WL 6339838, *5–6 (M.D.Pa. Dec. 19, 2011) (citing Stacey v. City of Hermitage, Civ. No. 2:02–cv–1911, 2008 WL 941642, *7 (W.D.Pa. Apr. 7, 2008) ("The gravamen of the [a]mended [c]omplaint is that [the d]efendants failed to exercise the appropriate standard of care and [the p]laintiff cannot repackage the claim under an assumpsit theory to ... avoid the two-year statute of limitations."); IBEW Local 380 Pension Fund v. Buck Consultants, Civ. No. 03–cv–4932, 2008 WL 269476, *9 n. 5 (E.D.Pa. Jan. 30, 2008) ("Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract."); Storm v. Golden, 371 Pa.Super. 368, 538 A.2d 61, 65 (1988) ("[A]ppellant's assumpsit claim is not a true contract cause of action but sounds in negligence by alleging [that attorney] failed to exercise the appropriate standard of care.")). Rather, **it remained consistent that, in a claim based on breach of an attorney-client agreement, the attorney's liability "must be assessed under the terms of the**

**contract**." See, e.g., Vadovsky v. Treat, Civ. No. 3:08–cv–1415, 2010 WL 2640156, \*6 (M.D.Pa. June 11, 2010) (citing Fiorentino v. Rapoport, 693 A.2d 208, 213 (Pa.Super.Ct.1997)). Accordingly, while there is intermediate appellate court support for Plaintiff's argument, the court can neither conclude it made a clear error of law by dismissing the Connelly Defendants nor that Coleman is an intervening change in controlling law.

Based on the foregoing, the court neither finds that Coleman constitutes a change in the controlling applicable law, nor that the court made a clear error of law by dismissing the Connelly Defendants. Moreover, even if it had, a Rule 60(b)(6) motion is inappropriate to challenge such an error under the circumstances presented herein. For these reasons, the court will deny Plaintiff's motion for reconsideration of its December 29, 2009 order dismissing the Connelly Defendants.

(Emphasis added).

In short, the court agrees with defendants who state "because plaintiffs do not allege a specific instruction or agreement that defendants supposedly breached, but instead allege that defendants 'deviated from the *standard of care of a reasonable* attorney' (2d Am. Cplt. [para.] 140 [emphasis added]), their claims sound in tort and so are time-barred." (Doc. 15, at 17). See Knopick v. Downey, 963 F.Supp.2d at 389-90; *Frantz v. Fasullo, supra*. Further, as defendants correctly indicate, plaintiffs filed a COM in this case "further showing that the basis of their claim is deviation from a professional standard of care, and not breach of a contractual duty." (Id., at 31). Indeed, Pennsylvania law requires that "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action **asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional**

20

**standard**.'" Smith v. Friends Hospital, 928 A.2d 1072, 1074–75 (Pa.Super.Ct.2007) (quoting Pa.R.Civ.P. 1042.3) (emphasis added).

Based on the case of *Frantz v. Fasullo*, which was decided after the briefs were submitted in this case, and its thorough analysis of when a COM is required to be filed under Pennsylvania law in the context of a legal malpractice action, and based on the *Bruno* and *Knopick* cases, the court agrees with defendants and finds that it "should deem plaintiffs' claims as sounding in negligence, and therefore barred by Pennsylvania's two-year statute of limitations." (Id.).

Finally, defendants contend that plaintiffs have not properly alleged that they breached a specific instruction or promise. Plaintiffs state they alleged in their pleading that the contract which was breached was the November 16, 2009 letter [in all of their complaints, plaintiffs incorrectly stated the date of the letter as "November 19, 2003"] from defendant Savitsky to NYCM. (Doc. 24, at 5. Doc. 15-1, at 23). In this letter, plaintiffs allege that "Savitsky advised NYCM that he would base his legal opinion on his review of NYCM's file, that he would perform legal research applicable to the facts of this case, and that in addition to being 'completely thorough,' he would confer with all counsel in Margolis Edelstein's Scranton office prior to providing his legal opinion to NYCM regarding its potential exposure to an insurance bad faith claim." (Doc. 6, at 13, para. 101). The complete November 16, 2009 letter from Savitsky to NYCM is found at Doc. 15-1, at 23. In their opposition brief, Plaintiffs contend that "defendants breached the agreement [i.e., the November 16, 2009 letter] through conduct that includes: 'failing to provide NYCM with a complete and correct analysis of the law governing insurance bad faith claims' and providing 'NYCM with legal advice that was so misleading that it precluded NYCM from making an informed judgment' with respect to its bad faith exposure." (Doc. 24, at 24. Doc. 6, at 18). Plaintiffs state that when Savitsky began to perform

legal research pursuant to his letter, "[they] allege that defendants failed 'to conduct thorough legal research regarding insurance bad faith claims.'" (Doc. 24, at 24, citing to Doc. 6 at para. 137). Plaintiffs also note they are prepared to show that defendants failed to uphold their agreement to "confer with all counsel in [their] Scranton office" before providing an opinion on NYCM's bad faith exposure. (Id., at 24, n. 11). As such, plaintiffs state that they did identify the specific provisions in the agreement that defendants breached, and that their second amended complaint sufficiently alleges claims sounding in contract that are subject to a 4-year statute of limitations.

The specific allegations of plaintiffs' second amended complaint at issue are as follows:

> 128. Mr. Savitsky advised NYCM that he would base his legal opinion on his review of NYCM's file, that he would perform legal research applicable to the facts of the claim, and that in addition to being "completely thorough," he indicated that he would confer with all counsel in Margolis Edelstein's Scranton office prior to providing his legal opinion to NYCM regarding its potential exposure to a bad faith claim.
>
> 129. In doing so, Mr. Savitsky and the Margolis Edelstein Firm undertook and agreed to provide NYCM with professional services consistent with those expected of the profession at large.
>
> 130. Mr. Savitsky and the Margolis Edelstein Firm held themselves out as legal professionals and provided legal services to NYCM.
>
> 131. Mr. Savitsky and the Margolis Edelstein Firm held themselves out as knowledgeable professionals in the area of insurance bad faith law in the Commonwealth of Pennsylvania.
>
> 132. NYCM, a New York insurance company, relied on the knowledge and expertise purportedly possessed by Mr. Savitsky and the Margolis Edelstein Firm in the area of

insurance bad faith law in the Commonwealth of Pennsylvania.

133. Mr. Savitsky and the Margolis Edelstein Firm **possessed a duty to conduct themselves as reasonable attorneys would act.**

134. Mr. Savitsky and the Margolis Edelstein Firm owed NYCM **a duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney**.

135. Mr. Savitsky and the Margolis Edelstein Firm **breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney by providing NYCM with incorrect and erroneous legal advice**.

136. Mr. Savitsky and the Margolis Edelstein Firm **breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney** by providing NYCM with legal advice that was so misleading that it precluded NYCM from making an informed judgment about whether to offer a sum in excess of its policy limits, or, to accept the opportunity to settle the Shannon claim for $200,000.

137. Mr. Savitsky and the Margolis Edelstein Firm **breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney** by failing to conduct thorough legal research regarding insurance bad faith claims in the Commonwealth of Pennsylvania.

138. Mr. Savitsky and the Margolis Edelstein Firm **breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney** by failing to provide NYCM with a complete and correct analysis of the law governing insurance bad faith claims in the Commonwealth of Pennsylvania.

139. Mr. Savitsky and the Margolis Edelstein Firm **breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable**

**attorney** by exposing NYCM to damages well in excess of the $200,000 that Shannon sought in order to settle the Bad Faith Action.

140. Mr. Savitsky and the Margolis Edelstein Firm **deviated from the standard of care of a reasonable attorney and breached the duties that they owed to NYCM**.

(Doc. 6, at 17-19, paras. 128-140) (emphasis added).

In reading these paragraphs in their entirety, the court agrees with defendants that the allegations amount to claims of negligence  and do not sufficiently allege specific instructions or provisions of the attorney-client agreement that defendants supposedly breached. The court finds that plaintiffs have attempted to expand upon their contract theory in their opposition brief, as detailed above, however, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Thus, the court finds that plaintiffs' claims, as alleged in their second amended complaint, must be characterized as professional negligence claims and not contract claims. *See Fratnz v. Fasullo, supra*.

24

## V.      CONCLUSION

Based on the foregoing, the court will grant defendants' motion to dismiss plaintiffs' second amended complaint, (Doc. 14), as time-barred by Pennsylvania's two-year statute of limitations. The court will dismiss plaintiffs' second amended complaint with prejudice since plaintiffs' legal malpractice claims are time-barred and it would be futile to allow plaintiffs an opportunity to file a third amended complaint. See Alston v. Parker, 363 F.3d at 236. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: JANUARY 30, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0829-01.wpd